The first case for argument this morning is 14-5062, K-Con Building Systems v. U.S. Mr. Scott, whenever you're ready. Thank you very much. May it please the Court. My name is Bill Scott. I represent K-Con Building Systems. Eric Holmes, the Chief Operating Officer, is here with us today. K-Con Building Systems primarily deals with metal buildings for the government under a GSA contract. We're here today on a claim that primarily deals with remission of liquidated damages, and there are three issues I'd like to discuss. First, I'd like to discuss liquidated damages, the affirmative defenses, and the Maripakas decision. Second, the liquidated damages as a penalty. And third, if time permits, the notice issues that were brought up in the lower court. Can I... I appreciate it, and I'd like to let you cover what you do, but I guess I have some questions on the kind of jurisdictional question, which I find very confusing. So if you wouldn't mind going to that first. On the liquidated damages and the Maripakas... Go ahead. On the liquidated damages... Well, this is whether or not... I mean, you're saying that you could have amended the claim, and that the court... I guess I'm trying to understand what's going on. You're saying that the 2006 issues that were raised to the contracting officer, that the contracting officer had jurisdiction over those issues, and you should have been allowed to amend the pending claim before the court of claims to include those issues. That is correct. That's the same claim issue. The first claim was submitted solely as a defensive claim, and as a result of the rejection of a pay application for... and the government withheld liquidated damages. That claim did not assert any affirmative claims. It was... it said, these are the defenses to a claim by the government for the assessment of liquidated damages. It didn't even have to be filed. We wanted a final decision. So what was the... in that first scenario, in your exchange with the contracting officer, they asked you for additional information or to... what was that additional information concerning? I think they wanted us... I've never seen it occur, but I think they wanted us to enumerate each and every different alleged delay that they caused. And we said those documents, that information can be found within the documents in the contract. They responded, and they said that there were some issues with weather delays that they acknowledged, but they did issue a final decision. Then the second claim was issued solely on the changes clause. It dealt solely with changes under the contract... as a result of design review comments. So were you seeking... this is comparing the two claims, or whatever we're calling them. Were you seeking one different relief, but was the basis for the relief also different in those two claims? The basis for the relief was different in both claims. The first was remission of liquidated damages, a government claim, distinctly different from an affirmative claim by the government for more money. Let me just ask this version of the question. You sought the remission of the liquidated damages on two grounds. Same relief, two grounds. One is unenforceable penalty. Second, the deadline for your completion should have been extended because the government demanded changes. Actually, there were different reasons for the first claim. There were enumerated offenses for the assessment of liquidated damages. One, they breached the contract by failing to pay. We were not the sole cause of the delays. Excusable delay. There was concurrent delay. There were changes that resulted in... that should have been granted... extensions should have been granted for. And then the penalty. The court has only addressed the excusable... for the delay and the penalty issue. The court never addressed our claim in the first claim for a breach of contract for failure to pay. And our argument is if the government breached first, they cannot enforce a provision, the liquidated damages provision. So if it were established that the government was responsible for the delay, whether it was raised as a defense or that the changes clause was inadequately implemented because it didn't extend the completion time or whatever, that you would have then the remedy that you seek on whatever basis, technicality or not, it's established that the government was responsible for the months of delay. Is that right? Yes, either one would have established the remedy, but they are distinctly different. A government claim is not the same as a contractor claim. And the days... the money is clearly different. It's money going from us to them. I guess what I'm trying to understand is the substance of your compensation for extra work based on government-demanded-changes claim the same as the substance of your they-demanded-changes and it delayed our completion. Could you make out a deadline-extension claim without proving the same thing for which you demand extra compensation for the extra work under the changes clause? Yes, I think on a CPM. It would be a different case. A critical path method, which is what the court has asked for proving extensions. You have to show where the delays occurred during the contract. And they are different. And the liquidated damages are for the end of the contract until it's accepted as complete. A date that doesn't require a contract modification and would not be covered by the Merit Progress Decision. But also, it's from the end of the contract to completion. The delays associated with specific claims would be during the performance period. When they may add up to the same days, they would be for distinctly different times. I'm not sure if you... No, you basically made me more confused than when I started. But I'm not quite sure how to proceed. But basically, our position is they are distinctly different claims. One is an affirmative claim for remission of liquidated damages. I understand perfectly the relief is different. One is $109,000. The other is slightly under $200,000. One is for compensation. One is to say you don't have to pay liquidated damages because you really, really weren't late. And I'm trying to understand what the relation is between the, here's why we weren't late and they made us do more stuff. Oh, they made us do more stuff under the contract... I mean, under the Changes Clause. They directed us. They told Kacon in a letter dated July 8th, you include all the comments on the drawings that we have made. We consider that a constructive change, regardless of whether they were required by the contract. And those changes required extensions to the contract. Do you think or do you argue that you would be entitled to the deadline extension, thereby reducing the number of days late maybe to zero, even if the government demanded changes but you failed to meet the precondition of the Changes Clause that you give them a certain kind of time limit? Yes, in this case, I think the constructive... there was no prejudice to them. They never would have agreed that these were changes. And second, the July 8th letter, where they directed us to include these comments with clear direction, we're not going to pay you until you include those changes. That, I think, to a small business like Kacon, particularly considering this is the third of three contracts where Kacon got beat up pretty badly, they had to do that work. And there was no prejudice for the extension. The government actually got a better product by the additional changes than they would have had otherwise. And they would have insisted on those even if they didn't think they were changes. They made it clear, we don't think these are changes. They would have made us do it no matter what. So there can be no prejudice when they would have insisted on us doing them anyway. So the reason that that then sort of answers the question as to why in the various additional information and so on, that apparently there was no negotiation for additional compensation and no discussion of the additional time that the changes would take. Until it turned out, was it not expected that it would take longer to perform in a different manner? Oh, I think everybody knew it was. And there were schedules that were provided to the government during the entire process that showed the extensions that were being incurred. So the schedule was provided, but with no contract adjustment? No, there was no contract adjustment. Kacon was put in a position, do the work. We're going to assess LDs. We're not going to pay you for the work. It was that simple. And I hate to say it, but that's what the Coast Guard did. We're not going to pay you unless you include these comments. We don't consider them changes. Do them anyhow, and we'll deal with it later. All right, so that would explain why there wasn't an additional claim, perhaps, for additional compensation. But it was not foreseen by either side that it would take longer? It had to be... It took longer, and everybody had to know that. And I think the government's expert made it clear that even... You know, with the same documents that we said, these are the documents in the record, he found every alleged delay and said 37 days of those were the government's responsibility. At least 37 days. And that didn't include extensions for the comments on the drawings and other extensions that we think are appropriate. I mean, the government... If you look at the facts of this case, at the beginning they said, we want a change. So KCON didn't do some things that they intended to do, waiting on the government to make the change, and then the government said, we don't want those changes. So KCON proceeded, and then it got to the drawing review process, and the government came back and said, we want all these included in the drawings, I mean, in the building, regardless of whether it changes, we're not going to pay you, and do those things. So KCON was put in a position, I must do that work. Does that answer your question? Well, yes, it does, but it certainly raises additional questions so that I can see that if it were understood, and particularly if it were recorded, that this work would take longer than what was initially perceived. It does seem strange indeed that there were delay damages assessed. The government knew what was going on. They were given schedules. There are letters in the appendix that say they were... You know, we didn't go back and say we want an extension of so many days, because, candidly, it would not have made any difference. They'd already told us we have to include these things. There were issues at the end about when the building was accepted. We thought it should be accepted in February. The government said no and didn't accept it until May for different reasons. So even that... And that's one of the issues that we don't believe is covered by merit practice, that when the contract is completed does not require a contract modification, and therefore it would... It should be an issue that's decided by the court. We should be able to try that issue alone, nothing else, to say the building was substantially complete. But did you say that it was completed in February? Yes. And that the only thing that happened in this period of assessment of delay damages was the government getting around to saying we accept it? There were punchless items that they said we thought it was substantially complete and could be used. The government would not accept it for various reasons. For example, there were... Was it reasonable reasons? I think some of them may have been partially reasonable, others were not. The fact that the building you don't have as-built drawings has never been an issue to deny substantial completion. You can't provide somebody as-built drawings until after the contract is over. I mean, you don't know what... The drawings are never completed before the building is over. The ventilation system testing is never completed when the contract is done because you have to do it during two periods, one during the winter and one during the summer. It's never done. You always have to come back. Those were some of the issues that they brought up. Those, regretfully, are not specifically addressed in the brief. No, I didn't see them. But those are issues that that is an issue of fact that we believe should have gone forward to the court and we should have been able to proceed on the issue of remission of liquidated damages. In addition to the additional cost of the changes that were directed by the government, for example, additional windows and everything else that were not required by the specifications. Okay, why don't we hear from... Turn to the government. You've exhausted most of your rebuttal time. We still have two minutes. May it please the court. In granting judgment for the government in this case, the trial court rightly rejected KCON's efforts to avoid the terms of the bargain it struck with the Coast Guard. That bargain included a liquidated damages rate. KCON didn't finish the project on time without excuse and the Coast Guard properly assessed liquidated damages. As the trial court correctly found, there was no basis not to enforce that provision of the contract. That part of the court's decision should be affirmed, as should the court's decision to dismiss KCON's claim for an extension of time. Under Charmin, KCON's effort to submit that claim to the contracting officer after litigation had already been convent... To submit which claim, I'm sorry? The claim for an extension of time. Now, is that like a declaratory judgment? When you say a claim for an extension, nothing concrete is happening. Do they get a certificate saying you now have an extension or is there money involved? If a claim for an extension of time were to be granted by a contracting officer, the contract's terms would be adjusted and the specific term that would be adjusted would be the contract completion date. So in the contract, there's a contract completion date. In this one, it was November 20th, 2004. If KCON thought it was entitled to additional time to finish the work... Would that have any consequence? This was all brought after the contract was in fact complete. So would the adjustment of the completion date have any consequence other than the remission of liquidated damages, either in total or in part? I'm trying to understand the relation between this thing that's being talked about as a claim for an extension and the two claims that I understand as concrete, $109,000, $196,000. I understand what those are claims. Obviously, this one in the middle seems like a ground or an argument unless it's like a declaratory judgment. Well, that's right, Your Honor, in that we don't see separate claims here. And so perhaps I wasn't as precise in my language as I could have been. We see all of KCON's theories in this case to be part of a single indivisible claim. The reason why it wants the extension of time to complete the project is the same reason why it claims that the contract was changed or the same reasoning. It's all the same arguments packaged under different headings or phrases. Did you or do you, I didn't think you did, dispute the jurisdiction of the Court of Federal Claims to decide whether the liquidated damages penalty was unenforceable because it was a penalty and not reasonably related to possible damages? No, Your Honor. We did not dispute the court's jurisdiction. That must have been a claim distinct from the claims that you did dispute jurisdiction over. It can't be all one. I mean, not in your view, it can't be all one. If you say they had jurisdiction over some but not over one. Right. So to be precise, the government asserted a claim of liquidated damages. KCON followed up with its own claim letter. In that claim letter from 2005, the only thing that KCON adequately identified was its allegation that the liquidated damages rate was an unenforceable penalty. So whether we're going to call that a separate claim by KCON at that time, that's what the trial court found, is that that initial claim was valid only as to that issue. Meanwhile, the government had made the initial claim. So whether that was even necessary is questionable. But certainly that's a claim. We haven't disputed, however you look at it, we haven't disputed whether the court had jurisdiction to address whether the liquidated damages rate was an unenforceable penalty. The trial court properly found that it wasn't. And in this case, KCON's arguments don't even line up with the theory. This is a narrow exception that allows for a court not to enforce a clause of a contract, a liquidated damages provision, because it finds that it's not really a liquidated damages provision but instead was a penalty. Well, KCON's arguments don't show that. KCON takes the view that if it can only show an error in how that was calculated, or show that if it were going to be recalculated today it would have been slightly different, then it won't have to pay any of the liquidated damages and will be entitled to receive all of that money back. That's not right. That's not what that legal theory allows for. And the errors that KCON contends are errors are generally not even errors. What, at least qualitatively, are the kind of harms, losses, whatever, that a Coast Guard would incur from delay in completion? There's a whole variety of harms, but the ones that were used to calculate this liquidated damages rate were generally the time and expense the Coast Guard was going to expend by continuing to monitor and oversee this contract if it went longer than the 10 months that it was supposed to run. And so those include travel costs of government personnel to the project site.  in overseeing the contract from project manager to contracting officer and throughout the government team. And so the government looked at those costs and made an estimate, and the idea was to arrive at compensation. KCON's arguments show that. They don't show that it was a penalty. They show by looking at the details of how this was calculated, an inquiry which the court doesn't make, KCON actually shows that compensation was the objective aimed at. Trial court was right to find that there's just no argument here that could, even if it were proven, show that this liquidated damages rate was a penalty. I gather that there's no dispute that at least some of the changes were not in the original drawings, like putting in new windows or whatever. Is that right? That's not right, Your Honor. We don't think that there were any changes here. And, in fact, our view is neither did KCON at the time of performance. What happened here was that the Coast Guard made comments in response to design submittals. So this was a design-build contract, and part of the contract required KCON to design a structure for the Coast Guard. And the contract contemplated that upon receipt of KCON's design submittals at various stages, the Coast Guard would make comments. Is there any question as to whether some of the comments, in order to perform them as they were performed, incurred costs in addition to what might have been incurred had those comments not been made? We don't see any evidence of KCON having incurred additional costs, and that was actually an alternative basis for our summary judgment motion before the trial court. The trial court never reached that issue because the court found that it did have jurisdiction on the changes claim as a separate claim. We disagree with that. But then the court found that KCON had no evidence at all that it complied with the written notice requirement. But apparently there were a lot of changes, nonetheless. Without knowing how or why, I gathered it was not disputed that there had been a number of changes. No, Your Honor. We don't agree that any change occurred on this contract. We don't think that's true. You think all of these things were just suggestions, why don't you do it this way, put in an extra molding, or something like that? They were, and if we go and look at them. So, for example, if you go to appendix page 345 through 348, you see that after all of these comments, from virtually every comment, KCON writes, We'll comply. We'll comply. We'll comply. They indicate that they're in agreement with these comments. And I want to just make the note that on these pages of view. But they said we'll comply. But did they say we'll comply for free? I mean, was cost ever discussed? Or the additional time? KCON never suggested to the Coast Guard that they thought there was some additional cost due for these comments, or some additional time, until more than a year into litigation, well after the contract had been completed. Well, because perhaps they didn't expect to be hit with liquidated damages for the additional time that this will comply, which they were willing to do, perhaps at their expense. Perhaps this was a surprise that all of a sudden we told you we'll comply with all of these nice little things that we've asked for, but never mind. We're going to hold you to the strict, tight schedule that we've got in the contract. The evidence doesn't support that that could have been a reasonable perception on KCON's point of perspective, and here's why. But they didn't ask for an extension. And yet I think it's not disputed that something took longer. Nobody said that they went and took a holiday or whatever, or that the work was not diligently done. As of May 10, 2004, KCON wrote a letter to the Coast Guard that said, we're going to finish on time. That's after these comments had happened. KCON still told the Coast Guard that it could finish the project on time. So not only did KCON not say, I want an extension of time, KCON told the Coast Guard, we're still on schedule. So what happened in this period, these last few months? I gather a certain amount of it, no work was done. It was just that the government was going through its punch list and finally got around to saying, okay, we're through. No, Your Honor, that's not right. KCON continued to perform work on the project to get it done, up until the point at which the Coast Guard accepted the bill. Well, if the contract... This is really what I don't understand. If there's no question but that the work was being done diligently, and if it turned out, after all, that it took longer, let's say a month or two longer, after all this was not that simple a construction, that there was not just an ordinary accommodation without turning it into a crisis? Part of the work was not done diligently, and that includes the design work that was done by KCON. In the record, the Coast Guard... I didn't see that in the record. Any criticism of your not working? I'm sorry? So separate parts, during the design phase and then during the construction phase. In the record, in the appendix, there's not much on specifics about the actual construction process and what was going on or not going on then. Which would lead one to believe that it was straightforward, that there was nothing to criticize. Well, it might just not be an issue before the court on this appeal. I don't know. The issue is liquidated damages for months so that something didn't work as contemplated. Right, but what you do see in the appendix is repeated references to the Coast Guard saying to KCON, when will you submit these design submittals? They had to submit a series of design submittals up through the complete design. And the Coast Guard kept saying, you're behind, when are you going to submit these design submittals? And KCON told the Coast Guard... But these were for the changes, right? Well, we don't think they were changes. KCON didn't think they were changes either. Well, then they should have been in the original contract or before the contract was even let. And the Coast Guard apparently didn't ask for them. They didn't present it. And so perhaps there wasn't quite a meeting of the minds as to what the building was supposed to look like until the Coast Guard filled in the details and it turned out to take longer. Respectfully, Your Honor, we don't see it that way. We think that these things were in the contract and that's why the Coast Guard made the comments on these submittals. In some cases, these were extremely minor things. And so the Coast Guard didn't need to have a specification in the contract that said, well, we're not sure this works right on your design. The pressures won't balance with your duct work. That's a reasonable comment for the Coast Guard to make in reviewing a design submittal. The Coast Guard led a contract in which the contractor had to design a building to comply with all requirements and standard building processes. The Coast Guard didn't need to foresee every potential design comment it could have at the time the solicitation was issued. Maybe they didn't. But what troubles me, as you can see, is it seems very strange. Nobody's trying to get away with anything. It just turns out that a little more work needed to be done and it was done. No one says it wasn't done competently. No one says it wasn't done with, say, ordinary reasonable diligence. And at the very end, after what looked like a sizable amount of back and forth to come up with the building the Coast Guard wanted, we go back to the strict letter and say, all right, it took you a few months longer. We're going to penalize you. Your Honor, we don't think that there was more work. We think KCON just didn't complete the work that was in the contract. Well, that's exactly the problem. There was not, obviously, a meeting of the minds, that if the Coast Guard thought that all of this was originally involved, even though it wasn't explicit in the drawings initially and the contractor viewed the drawings a little bit differently, so that perhaps there was some kind of mutual mistake or misunderstanding. Your Honor, we don't see it that way. This was a design-build contract. The contractor was supposed to create the drawings and the contractor was supposed to produce the design for the facility. Can I speak before you sit down? Can I just ask you, there's no way that we can avoid this threshold, apparent jurisdictional question of deciding what a claim is by addressing the merits. Is that right? I don't think so, Your Honor. I think the court does need to decide. And what is your definition, if you can state it in a single formulation, of what constitutes a claim? A claim is a demand for relief that can't be divided into separate matters. And one individual demand for relief that's based on a single set of operative facts. I'm not sure those are quite the same things, what you said first and then what you said second, because the demand for $109,000 in remission of liquidated damages had two grounds. One, it's unenforceable as a penalty, and two, the deadline should have been extended so that we weren't actually late. And you agree that the Court of Federal Claims had jurisdiction to decide the first question. You contest and the CFC found that it lacked jurisdiction to determine the second question, even though they are both about the same monetary demand. The reason that was is because the initial claim failed to identify what the delay was. I understand the reason that they didn't give sufficient detail to the contracting officer about why they were entitled to a deadline extension. I'm at a threshold question of trying to understand what do the sentences read like in an opinion that says a claim is... The claim that was properly before the court by the time we got to the end of this was only that the liquidated damages rate was an unenforceable penalty. It might be that parts of a claim... I'm sorry, by the time it got to the court, you had better be saying that the complaint actually involved a request for a determination of deadline extension. It did, absolutely. I'm sorry if I wasn't clear there. By the time the court rendered its decision, so under the amended complaint, the only part of the claim that was properly before the court at that time when the court rendered its summary judgment opinions was whether the liquidated damages rate was an unenforceable penalty. You may have a huge broad claim and all of it can't be divided. It's an individual part of one claim. But the contractor may not pursue the whole claim. Contractor may pursue... I'm sorry, the litigation... I thought that in fact the ground on which the Court of Federal Claims said that the second letter, the December 2006 letter, was not an adequate claim submitted to the contracting officer for purposes of preserving, of allowing litigation under the Contract Disputes Act of the request for a deadline extension was that the contracting officer in December 2006 to January 2007 couldn't act on it because that was actually in litigation. It sure was. It was in litigation because of the complaint. Paragraph 6 of the complaint... Right, so now I'm not sure what you were saying about how the litigation didn't actually involve that claim. No, no. The litigation should have been proper because the contracting officer hadn't been presented it. Is that wrong? I didn't understand that right. Let me just try to... I'll try to say it as best I can. When KCON initiated litigation with its original complaint, it put into issue all of what it now wants to argue. It put into issue the question of whether the liquidated damages rate was penalty. It put into issue paragraph 6, Joint Appendix page 68, I think, paragraph 6 of the original complaint, says we want a time extension. The next paragraph says changes. That original complaint put into litigation everything. The result then is that anything that wasn't properly presented to the contracting officer before that original complaint couldn't be presented again unless KCON dismissed that from the action that was in litigation. So you get them coming and going. I mean, you can't get it in here because you didn't appropriately go to the contracting officer, but you can't go back and go to the contracting officer because the contracting officer doesn't have jurisdiction because the complaint, which the court doesn't have jurisdiction over, is still before the court, right? Unless you dismiss your case, right. If your case is still pending in court and it's in litigation, that's what the CDA requires. You can't give the contracting officer a chance to rule on it if you're already in court, and so you have to dismiss your case. But when you say, I guess what's a little striking to me is you say when you're in court and it's before the court, but what you're talking about here, at least in part, are questions which you say the court didn't have jurisdiction over in the first instance because they had never been through the 2005 contracting officer. You understand there's a little tension? Absolutely, but it's a different question. Not having jurisdiction doesn't mean it's not in litigation. If the court takes many years to figure out it doesn't have jurisdiction, it doesn't mean it wasn't in litigation the whole time. So what recourse does the contractor have? Obviously, they could have in the first instance waited and put it all before the contracting officer and go off in one swoop. But given where they are now, are you suggesting then that they have to dismiss the first complaint and then refile with everything in it? I don't know if they're time-barred or what the clock is here. Would they be time-barred if they did that? Yes, here in 2014 for a contract that ended in 2005, they would. But that's an option, dismissing when you're not time-barred. But the other thing in this case, and there's this feeling that this is unfair, but look back at what happened when CAECON submitted its original attempt to claim to the contracting officer. The contracting officer wrote back, I can't issue a final decision on this because you haven't told me what your basis is. Give me more information. And what did CAECON say back to the contracting officer? Go look at your contract file. It quoted a Board of Contract Appeals decision saying, I don't have to give you any more. It wasn't as though CAECON got trapped. CAECON made the decision to rush into court, and it was a perilous one. Thank you. Thank you. Why don't we give you five minutes to reply if you need it. Thank you very much. First off, with regard to the issue of how do you get an extension? Usually there's a changes clause. There are three clauses at issue here. There's a changes clause where there's a change in the specifications it's on. It requires the contracting officer issue a modification and extend the performance period if necessary. There's the default clause for construction contracts like this, and it includes the excusable delay provision, and it requires that for certain reasons, excusable delay, you go to the contracting officer, and again, the contracting officer can extend the contract. The third issue, this contract is different. It was under the GSA contract. The GSA has a separate excusable delay clause that does not require an extension. It would be more like the third-door judgment action. It says that if there's a delay, you cannot hold the contractor, a delay beyond his control, whether interference by the government or otherwise, you cannot hold them in default, which would get rid of the liquidated damages and not require contract modification. With regard to the liquidated damages, there are two parts to liquidated damages provision. The first part is absolutely correct. It is for the additional cost that the government incurred for inspection, travel, and expenses relating to that government, I mean, to that contract. We don't have any problem with that. As I outlined in the brief, that's not the issue. It's the second part of that liquidated damages rate that is offensive and is a penalty. They're charging the contractor for costs that they would have incurred regardless of anything. The only testimony in the record is those costs would be incurred whether this contract was never awarded, one day late, or five years late. Well, I think in response to my question, what Mr. Volk said plausibly on its face is if their people have to monitor this thing for six more months, that's more time. There's no question that it's more time, but the issue is is it additional cost and can you trace or say it's to this particular contract? And the FAR has two provisions, probable damages to a particular contract. The government doesn't even argue that it meets those requirements because it can't. We know that they're not probable damages to the same cost they would have incurred anyhow, and as far as to this particular contract, they say you have to look at this on the macro level. We can't go to a particular contract. If you looked at unabsorbed overhead with a contractor, a contractor can't claim unabsorbed overhead for costs that would have incurred anyhow, or particularly if it gets money from another source to pay for that. I don't think I understand what you're saying. If these are costs that obviously if it took six more months, the government had to dedicate more administrative staff or whatever. There was a cost in doing that. Why isn't that a real cost? Because, well, first off, the first part of that, the first part for administrative services would have been covered in Part 1. Part 2 were for particular people that were hired regardless and would have been paid just like all. Well, they may have been hired regardless, but presumably they would have been doing something other than what they were doing with regard to the contract. Yeah, they may have been on the payroll, but they wouldn't have been doing those things. So isn't that necessarily a cost, even if they would have been hired anyway? It is not. They are not damages because they are not, in addition to anything else they would have had. Damages, by definition, are additional costs. There are no additional costs. Those people would have been doing the same thing, just like all of us here. They wouldn't have been doing the same thing. You're just saying they wouldn't have been fired, so they would have been utilizing staff. The staff was on the payroll, so they would have utilized them elsewhere. So, obviously, it's a cost. People who would have been doing other things were now forced to do this. Why isn't that a real cost? I think that's correct, but then you get to the third portion where they use an instruction that says, don't use it for this. It says, don't use this instruction. It doesn't say don't use it. It says, don't use it for contracting actions. It says, don't use it for long periods of time, monthly or yearly rates, and the contracting officer uses for months. They're using this based on a monthly rate, and it was used improperly mathematically and based on the document itself. So, even if you get to that, they're using it based on a rate that says, I mean, on an instruction that says, don't use it for these purposes, specifically, and that's the problem, that even if you say, yes, they're damages, they use it on an instruction that's not applicable and says, don't use it for this. When a government uses an instruction improperly, it's, per se, objectionable. The fourth issue, or the third issue, really, is this is a design build, and it goes to your comments about the changes. My client was obligated to pay, I mean, to build something based on plans and specifications and do the design for that within the specifications. The government came back and said, I want a window in this door. I want this done. I want this done. They weren't specifically required in the contract, so we didn't bid on them, and that's why the cost went up. The expert report, the delays that you asked about and when they were, the delays occurred during three periods. Early in the contract period, when they asked for the modifications and then decided not to do it. During the design phase, the construction phase went very well, and then at the end, the acceptance phase. Those are all addressed in the expert report, which is at the end of the appendix. I think those are most of the issues. I can tell you there were no warranties on this case, I mean, on this building. It was built. There have been no warranty claims or anything else. They got more than what they asked for. Thank you. Thank you for that. Thank both counsel, and the case is submitted.